**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                                        No. CR 04-1677 JB

DONOVAN JONES NEHA,
DION LAMY,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant Donovan Jones Neha's Motion for Judgment of Acquittal on All Counts, filed December 8, 2005 (Doc. 270). The primary issue is whether the United States introduced sufficient evidence for a reasonable jury to conclude the alleged crime occurred in Indian Country. Because the jury could make a reasonable inference, from the testimony of Dancy Simplicio, Laisha Peyketewa, the alleged victim, and Aaron Cheama, and from exhibits introduced by the United States, that the scene of the alleged crime was located within the exterior boundaries of the Zuni Reservation at the time of the crime, the Court concludes that the United States introduced sufficient evidence on this element and will deny Neha's motion.

**PROCEDURAL BACKGROUND**

On August 25, 2004, a federal grand jury returned a five-count Indictment against Neha, Dion Lamy, and Cheama. On February 25, 2005, a federal grand jury returned a seven-count Superseding Indictment against Lamy and Neha.[1] The Superseding Indictment charged Neha in Counts I-III of violating 18 U.S.C. § 2242(2)(B), Sexual Abuse, and 18 U.S.C. § 2, Aiding and Abetting. The grand

---

[1] Cheama pled guilty to Count II of the original indictment on November 18, 2004.

jury also charged Neha in Counts IV-V of violating 18 U.S.C. § 113(a)(4), Assault by Striking, Beating, or Wounding, and 18 U.S.C. § 2, Aiding and Abetting. Finally, the Superseding Indictment charged Neha in Counts VI-VII of violating 18 U.S.C. § 2244(a)(2), Abusive Sexual Contact, and 18 U.S.C. § 2, Aiding and Abetting. Only Counts I-III, however, were eventually submitted to the jury. See Court's Final Jury Instructions (Given) at 18-21, filed December 1, 2005 (Doc. 263).

18 U.S.C. § 2242(2)(B) provides:

> Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General knowingly . . .
>
> (2) engages in a sexual act with another person if that other person is . . .
>
>   (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act; or attempts to do so, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1153(a) extends § 2242(2)(B)'s proscription to sexual assault committed by an Indian against "another Indian or other person . . . within the Indian country. . . ." The United States contends that the crime in this case occurred in Indian Country, specifically, within the Zuni Reservation. See Transcript of Trial at 24:17-19 (taken November 29, 2005)[2]; Transcript of Trial at 5:2-5 (taken December 1, 2005).

At trial, the United States called Dancy Simplicio from the Zuni Tribal Realty Office as a witness to prove the Indian Country element. See Transcript of Trial at 156:19-165:18 (taken November 30, 2005). Neha did not challenge Simplicio's qualifications as an expert witness or that the United States laid a proper foundation for this testimony. See generally Transcript of Trial at

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

164:17-19 (taken November 30, 2005); Transcript of Trial at 35:10-52:23 (taken December 1, 2005). Neha did not cross-examine Simplicio, and did not contend that Simplicio was mistaken in her conclusions. See generally Transcript of Trial at 164:17-19 (taken November 30, 2005); Transcript of Trial at 35:10-52:23 (taken December 1, 2005).

The United States introduced evidence through Simplicio that the acts occurred in Indian Country. See Transcript of Trial at 156:19-165:18 (taken November 30, 2005). Simplicio testified that the address 1311 Cottonwood Circle, the scene of the alleged crime, is located more than a mile within the Zuni Reservation and is Indian Country as that term is defined in the federal statutes. See id. at 161:20-162:3, 164:9-15 (taken November 30, 2005). Simplicio testified that the Zuni tribe has existed from time immemorial and that the Zuni tribe has lived on its land since before the European contact. See id. at 158:19-25. The tribe thereafter lived on its lands by virtue of a grant from the Spanish and later through a series of executive orders. See id. at 159:1-10. The United States also introduced three exhibits relating to Simplicio's testimony: a satellite photograph of 1311 Cottonwood Circle, a map showing the exterior boundaries of the Zuni Reservation, and a road map of the State of New Mexico. See id. at 159:15-19, 160:3-13, 160:20-162:10.

Counsel for Lamy cross-examined Simplicio. See id. at 164:21-165:19. The cross-examination did not challenge Simplicio's testimony, but instead inquired into the scale on the aerial photo introduced as an exhibit. See id.

Neha moves the Court, pursuant to rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal on all counts of the Superseding Indictment. Neha asserts that the United States failed to prove that the land on which the alleged crimes took place was Indian Country when those alleged crimes took place. See Motion for Judgment of Acquittal at 2-3. Neha requests that

the Court acquit him on all counts of the Superseding Indictment for failure to establish that element of the alleged crime. See id. The United States requests that the Court deny Neha's motion and let the jury verdict stand. See United States Response to Defendant's (Neha) Motion for Judgment of Acquittal on All Counts at 3, filed December 19, 2005 (Doc. 281).

## **FEDERAL JURISDICTION**

In a criminal prosecution, the United States must prove all elements of the charged offense beyond a reasonable doubt to obtain and sustain a conviction. See United States v. Visinaiz, 428 F.3d 1300, 1308 (10th Cir. 2005)(citing In re Winship, 397 U.S. 358, 364 (1970)), cert. denied, 126 S. Ct. 1101 (2006). 18 U.S.C. § 1153 gives federal courts jurisdiction over certain major crimes, such as sexual abuse, that an Indian commits in Indian Country. To establish jurisdiction, the burden is on the United States to prove that the defendant "committed the crime within Indian Country." Id. at 1306 (explaining that, to prove the crime of second degree murder in Indian Country, the United States must show that the defendant "committed the crime within Indian Country"). See United States v. Jewitt, 438 F.2d 495, 497 (8th Cir. 1971)("To establish jurisdiction, the burden is on the Government to prove that the major crime was committed by an Indian in Indian [C]ountry."). The United States Court of Appeals for the Tenth Circuit has explained that, "[a]s a general matter, the trial court decides the jurisdictional status of a particular property or area and then leaves to the jury the factual determination of whether the alleged crime occurred at the site." United States v. Roberts, 185 F.3d 1125, 1139 (10th Cir. 1999). The Tenth Circuit did not, however, explicitly join those Circuits that have stated, "in dicta, the trial court should *not* submit to the jury the question of whether a particular tract of land or geographic area is Indian Country." Id. at 1140.

## LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL

Rule 29 provides:

(a) Before Submission to the Jury. After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(b) Reserving Decision. The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

(c) After Jury Verdict or Discharge.

   (1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

   (2) Ruling on the Motion. If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

   (3) No Prior Motion Required. A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

In deciding a motion for judgment of acquittal, the Court must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Stiger, 413 F.3d 1185, 1193 (10th Cir. 2005)(quoting United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000))(internal quotations

omitted), cert. denied, 126 S. Ct. 775 (2005). The Court relies "on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." Id. at 1194 (quoting United States v. Radcliff, 331 F.3d 1153, 1157 (10th Cir. 2003))(internal quotations omitted). The Court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)(citations and internal quotations omitted). The Court's role is to determine whether the evidence, if believed, would establish each element of the crime. See United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004)(citations omitted). "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(quoting United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999))(internal quotations omitted). The court should not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. See United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)(citations omitted). The court should not uphold a conviction, however, "obtained by piling inference upon inference. An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning." United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(citations and internal quotations omitted). See also United States v. Summers, 414 F.3d 1287, 1294-95 (10th Cir. 2005)("The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, 'the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one.'").

## ANALYSIS

Neha moves the Court for a judgment of acquittal under rule 29, contending that the United States failed to prove beyond a reasonable doubt that the charged crimes occurred in Indian Country. See Motion for Judgment of Acquittal at 2-3. The United States argues that its expert witness, Simplicio, established that the scene of the crime, 1311 Cottonwood Circle, was Indian Country. Because a reasonable jury could have found the Indian Country element established beyond a reasonable doubt, the Court will deny Neha's motion.

Because the United States alleged that Neha committed sexual abuse under § 2242(2)(B) and § 1153, the United States had the burden of proving that Neha committed the crime within Indian Country. See United States v. Visinaiz, 428 F.3d at 1306. While the Tenth Circuit, in United States v. Roberts, stated that district courts can find, as a matter of law, that a particular location is Indian Country, and then instruct the jury to determine factually whether the offense occurred there, the Tenth Circuit did not require courts to follow that procedure. See 185 F.3d at 1140. The Tenth Circuit noted that some Circuits, in dicta, required the district court to make the jurisdictional determination and then leave to the jury the task of deciding whether the crime occurred on the spot deemed to be Indian Country, without adopting that precise holding. See id. The Court will therefore proceed to consider whether a reasonable juror could have concluded that 1311 Cottonwood Circle was Indian Country at the time of the alleged sexual abuse.

To establish that 1311 Cottonwood Circle was in Indian Country on the date of the alleged crime, June 15, 2002, the United States called Simplicio, an employee in the realty office in Zuni, to the stand. See Transcript of Trial at 156:19-165:18 (taken November 30, 2005). The United States discussed with her the history of the tribe and its land:

Q. Now, how long has the -- Just speaking historically for a minute, how long has the Zuni tribe existed?

A. For time memorial. We've been on our lands there -- In terms of the ownership, or are we talking about --

Q. No. Just -- I think you answered it.

A. We've lived in the same lands for before the European contact.

Q. All right. After the European contact, was there recognition of the Zuni pueblo and the Zuni tribe's claim to lands?

A. It began as a grant to -- that the Spanish Government gave to our people. Basically, this is where we came in, in terms of how our lands were first established, I guess, for the record being a Spanish grant. And, you know, thereafter, by various executive orders, the land base of the tribe did increase in what is now considered our reservation boundaries for this particular area.

Id. at 158:19-159:10.

The United States then referred Simplicio to three exhibits that the United States introduced:

Q. Let me just ask you if you can refer behind you here to what has been marked for identification as Exhibit 12D, which is simply a blowup of a road map of the state of New Mexico. But can you point out to the jury where the Zuni pueblo and Zuni reservation is? Can you step up and do that, please?

A. It would be right here.

Q. Okay. Could you stand aside so everyone --

A. It is right here. It is on the western area of the state of New Mexico. We -- Our reservation lands extend all the way to the west, which adjoins the state of Arizona, but our lands are in -- you can't see this, but it ends in the shaded area, but it does -- our reservation lands are in several different -- different counties.

Q. Let me ask you to look at another chart while you're up, if I may. This has been marked as 12C. And would you explain to the jury, if you would, what that represents to you?

A. This is basically a map showing the boundary of our lands within the state of New Mexico. This is State Highway 53, which goes through reservation lands and going

to the state of Arizona.  Zuni is -- Like I said, this is basically how our reservation boundaries are at this point.  But as I've indicated, Zuni is right here, and we have New Mexico State Highway 602 that also runs through the reservation boundaries from -- I believe from the McKinley County to Cibola County.

Q.  Now, as depicted on that exhibit that you're pointing to, are those the current boundaries of what's referred to as the Zuni reservation?

A.  Yes, it is.

Q.  Held in trust for the Zuni Indian tribe?

A.  Yes, it is.

Q.  While I still have you up, before you sit down again, let me ask you to identify, if you can, what's been marked as Exhibit 12B.  And if you can identify it, explain what that represents to the jury.

A.   This represents a housing unit.  It's basically HUD homes that are in this particular subdivision.  And this is New Mexico Highway 53 that, as I mentioned before, goes through our reservation boundaries.  Basically, this is within the reservation lands.

Q.  And what's the little insert, if you could relate that, which is a miniature of the previous exhibit?

A.  This is, like I say, the boundaries -- That covers what was previously shown, but this is the boundaries there of the reservation.

Q.  And can you relate the aerial photo to that insert of the boundaries of the Zuni reservation?

A.  Yes.  It would be -- Basically, this particular area would be about -- it would be about right there.

Q.  Pointing again.

MR. SMITH:  Can everyone see that?  I'll raise that.  I'm sorry, it's a little low.

BY MR. SMITH:

Q.  Let me ask you to point to that, relating the aerial photo to the insert below.

> A.  It would be right within this area.
>
> Q.  All right.  And while you're looking at that, about how far inside the boundaries of the Zuni reservation and the Zuni Indian Country would that area depicted in this aerial photo be located?  How far away from the exterior boundary?
>
> A.  Oh, it's quite a distance.  There's --
>
> Q.  Can you estimate how far?  More or less than a mile?
>
> A.  Definitely more than a mile.
>
> Q.  So it's more than a mile within the exterior boundaries?
>
> A.  Yes.

Id. at 159:15-162:3.  The United States then asked whether 1311 Cottonwood Circle appeared on the aerial photo:

> Q.  Now, on this particular aerial photo, which we've identified as 12B, were you asked to locate an address, 1311 Cottonwood Circle?
>
> A.  Yes, I was.
>
> Q.  Can you do that just looking at that?
>
> A.   Yes.  The location of that particular home would be -- we did, also, a GPS reading -- is this home right there.
>
> Q.  Could you just hold that point just for a second --
>
> A.  Sure.
>
> Q.  -- so the jury can see?
>
> A.  It's this home.
>
> Q.  That's 1311 Cottonwood Circle?
>
> A.  That's right.
>
> Q.  Have you been to that home at our request?

>   A. Yes, I have.
>
>   Q. You referred to some acronym, GPS?
>
>   A. Yes, the global positioning system, where we were able to get GPS readings through, I guess, a satellite. I'm not -- I'm not that familiar with it. But it -- You know, we did go out there. We did get a GPS read.
>
>   Q. What do you do once you've taken a GPS reading of a particular set of coordinates within the Zuni reservation?
>
>   A. I would then use that as a basis to locate it within what -- you know, whatever section that it may be, with a section township and range.
>
>   Q. So in addition to your general knowledge, you used that -- a satellite positioning to determine whether or not this is within the Zuni pueblo and reservation?
>
>   A. Basing it on that, I would -- you know, going through a general -- My position and the way I deal with lands is based on various sections, townships and ranges, and so, yes, I would use that, and we would try to go back and determine what section of the reservation this was.

Id. at 162:4-163:11. Finally, the United States asked Simplicio for her opinion whether 1311 Cottonwood Circle was within Indian Country:

>   Q. Do you have an opinion as to whether or not that location, 1311 Cottonwood Circle, is within the Zuni pueblo and the Zuni reservation?
>
>   A. It is within the reservation boundaries, yes, it is within the --
>
>   Q. Do you have an opinion if it is within Indian Country?
>
>   A. It is within Indian Country.

Id. at 164:9-15.

Neha attacks this exchange, and in particular the last quoted portion, as insufficient to establish that 1311 Cottonwood Circle was within Indian Country on June 15, 2002. See Motion for Judgment of Acquittal at 2-3. Neha suggests that Simplicio's testimony, at most, establishes that

1311 Cottonwood Circle was in Indian Country on the day that she testified; it does not set out whether 1311 Cottonwood Circle was in Indian Country on June 15, 2002.  See Transcript of Hearing at 4:6-5:3 (taken February 17, 2006).

Taking Simplicio's testimony, together with the reasonable inferences to be drawn therefrom, in the light most favorable to the United States, a reasonable jury could find that the United States satisfied this element beyond a reasonable doubt.  See United States v. Stiger, 413 F.3d at 1193. Reading the transcript strictly, Simplicio did not explicitly say that 1311 Cottonwood Circle was in Indian Country on June 15, 2002.  A reasonable juror, however, could have made reasonable inferences from her testimony that 1311 Cottonwood Circle was in Indian Country on the date of the alleged sexual assault.

Simplicio testified that the Zuni tribe has existed and lived on its lands since before the European contact.  See Transcript of Trial at 158:19-25 (taken November 30, 2005).  Simplicio traced the Zuni tribe's ownership of its lands from the European contact, when the Spanish Empire granted the lands to the Zuni tribe, through executive orders that United States presidents have issued.  See id. at 159:1-10.  Simplicio placed 1311 Cottonwood Circle within the boundaries of the Zuni reservation by "quite a distance. . . . Definitely more than a mile."  Id. at 160:3-162:16. Simplicio concluded that this location "is" within the Zuni reservation and "is" Indian Country.  Id. at 164:9-15.

From these portions of Simplicio's testimony, a reasonable juror could conclude that, given that the Zuni tribe has lived on its lands for centuries and that 1311 Cottonwood Circle is within the exterior boundaries of those lands, 1311 Cottonwood Circle was Indian Country on June 15, 2002, just as Simplicio testified it was when the Spanish arrived in New Mexico in the mid-sixteenth century

and on the day she appeared in Court.  Simplicio established these bookends in her testimony -- the European contact and November 30, 2005 -- and a reasonable juror could infer that 1311 Cottonwood Circle resided in Indian Country in the interim.  Nor does this line of thought require the piling of inference upon inference, because this conclusion flows from the single, reasonable inference outlined above.  See United States v. Valadez-Gallegos, 162 F.3d at 1262.  The gap separating the underlying facts and the ultimate conclusion is small, because the jury was not required to work its way through a succession of inferences to reach the conclusion that the crime took place within Indian Country.  See United States v. Summers, 414 F.3d at 1294-95.  The Court accepts the jury's resolution of this issue – that 1311 Cottonwood Circle was in Indian Country on June 15, 2002 – because it is, given Simplicio's testimony, within the bounds of reason.

In the alternative, the jury might also have inferred from the testimony of various non-expert witnesses that the crime occurred in Indian Country.  The alleged victim stated that she has lived on the Zuni reservation all of her life and that the house in which the crime occurred is on the reservation.  See Transcript of Trial at 85:3-19 (taken November 30, 2005).  Officer Laisha Peyketewa, of the Zuni Police Department, also identified the property as being on the Zuni reservation.  See Transcript of Trial at 6:21-8:2 (taken November 29, 2005).  Finally, Cheama, who has lived in the area all of his life, also placed the scene of the crime within Indian Country.  See id. at 167:16-24.  A reasonable juror could have inferred from their testimony that, although they used the word "is" in describing the property as within Indian Country, the witnesses intended to convey that the property was within Indian Country when the crime occurred.  Peyketewa and Cheama made their statements when describing events that took place on June 15-16, 2002, indicating that they meant to express the status of the property at that time even though they used the word "is."  Id. at

6:15-8:2, 166:19-167:24. The alleged victim and Cheama testified about the land's status immediately after stating that they had lived in the area all of their lives; a reasonable juror could have inferred from this testimony that the land has been on the reservation all of their lives, including the day of the alleged crime. See id. at 166:19-167:24; Transcript of Trial at 85:3-19 (taken November 30, 2005).

Moreover, the proceedings concerning this element are analogous to United States v. Stands, 105 F.3d 1565 (8th Cir. 1997). In that case, the United States contended that the crime occurred in "an Indian allotment, the Indian title to which has not been extinguished." Id. at 1571. The United States Court of Appeals for the Eighth Circuit initially determined that "the government adduced no testimonial evidence from which the jury could conclude that the assault took place on an allotment." Id. at 1573. The Eighth Circuit concluded, however, that the United States had established that the land in question was an Indian allotment, because it had introduced an exhibit on which the land in question was marked "Allot 1553." Id. The Eighth Circuit also addressed whether the same exhibit established that the Indian title to the land had not been extinguished by the time of the crime, because a change might have been made to the land's status since the map was drawn. Id. at 1574. The Eighth Circuit held that

> the jury reasonably could have found that the map is up-to-date and that, if the Indian title to the relevant parcel had been extinguished, the map would have reflected the change. As we noted above, in another plot in the same township, the designation "Allot 3093" is stricken by hand, and the map shows other handwritten changes. In the absence of an objection to the authenticity or accuracy of Exhibit 41B, the jury thus was entitled to infer that the map accurately represented the state of title at the time of the crime.

Id.

Like the map in United States v. Stands, Simplicio stated that the land belonged to the Zuni

tribe before the crime occurred – since before the European contact. As in United States v. Stands, Simplicio's testimony leaves open that changes might have occurred after the European contact, but before the trial, that would have altered the land's status in a manner impacting its status as Indian Country. Yet the jury could have found that Simplicio's statement that 1311 Cottonwood Circle "is" within Indian Country as of November 30, 2005, combined with the exhibits that placed the address within Indian Country and Simplicio's testimony that the land belonged to the Zuni tribe since before the European contact, encompassed the land's status backward in time from the trial, to June 15, 2002, just as the jury in United States v. Stands inferred that the map encompassed the land's status forward in time to the date of the crime.

Finally, Neha cites to United States v. Gipe, 672 F.2d 777 (9th Cir. 1982), for the following language: "The statutory definition of 'Indian [C]ountry' excludes fee-patented lands in non-Indian communities. We are therefore persuaded that the Government bears the burden of proving that the site of the offense was not a non-Indian community as part of its proof that the offense occurred in Indian [C]ountry." Id. at 779. If Neha means to say that the United States was required to prove that 1311 Cottonwood Circle was not a non-Indian community as part of its proof that the offense occurred in Indian country, then Neha is mistaken. The statute that the United States Court of Appeals for the Ninth Circuit examined in United States v. Gipe was 18 U.S.C. § 1156, which provided: "The term 'Indian [C]ountry' *as used in this section* does not include fee-patented lands in non-Indian communities or rights-of-way through Indian reservations, and this section does not apply to such lands or rights-of-way in the absence of a treaty or statute extending the Indian liquor laws thereto." (emphasis added). Neha was charged, however, under § 1153, which does not include this language. The Tenth Circuit's language in United States v. Visinaiz – that the United States must

prove, under § 1153, that Neha "committed the crime within Indian Country," see United States v. Visinaiz, 428 F.3d at 1306 – remains as the standard to apply in this case.

**IT IS ORDERED** that Defendant Neha's Motion for Judgment of Acquittal on All Counts is denied and the jury verdict will stand.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the District of
    New Mexico
Stan Whitaker
Fred C. Smith
  Assistant United States Attorneys
United States District of New Mexico
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles and Crow
Albuquerque, New Mexico

*Attorneys for Defendant Donovan Jones Neha*

John F. Moon Samore
Albuquerque, New Mexico

*Attorney for Defendant Dion Lamy*