# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                      No. CR 04-1677 JB

DONOVAN JONES NEHA and
DION LAMY,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Donovan Jones Neha's Motion for Judgment of Acquittal on Counts II and III, filed December 8, 2005 (Doc. 271).  The Court held a hearing on this motion on February 17, 2006.  The primary issue is whether the United States introduced sufficient evidence for a reasonable jury to conclude that Neha aided and abetted others in committing Counts II and III of the Superseding Indictment.  Because the jury could make a reasonable inference that Neha met the elements of 18 U.S.C. § 2, the Court will deny the motion.

## PROCEDURAL BACKGROUND

On August 25, 2004, a federal grand jury returned a five-count Indictment against Neha, Dion Lamy, and Aaron Cheama.  On February 25, 2005, a federal grand jury returned a seven-count Superseding Indictment against Lamy and Neha.[1]  The Superseding Indictment charged Neha in Counts I-III of violating 18 U.S.C. § 2242(2)(B), Sexual Abuse, and 18 U.S.C. § 2, Aiding and Abetting.  The grand jury also charged Neha in Counts IV-V of violating 18 U.S.C. § 113(a)(4), Assault by Striking, Beating, or Wounding, and 18 U.S.C. § 2, Aiding and Abetting.  Finally, the

---

[1] Cheama pled guilty to Count II of the original indictment on November 18, 2004.

Superseding Indictment charged Neha in Counts VI-VII of violating 18 U.S.C. § 2244(a)(2), Abusive Sexual Contact, and 18 U.S.C. § 2, Aiding and Abetting.  Only Counts I-III, however, were eventually submitted to the jury at trial.  See Court's Final Jury Instructions (Given) at 18-21, filed December 1, 2005 (Doc. 263).  On December 1, 2005, the jury convicted Neha on all three counts. See Verdict at 1, filed December 1, 2005 (Doc. 266).

Neha moves for a judgment of acquittal on Counts II and III because of a lack of evidence that he aided and abetted either count.  See Motion for Judgment of Acquittal at 1-4.  Specifically, Neha contends that there was no evidence that he aided and abetted Defendant Dion Lamy's sexual intercourse with the victim, or that he aided and abetted placing objects into the victim's vagina.  See id.  The United States responds that Neha was "fully engaged in the criminal venture" and helped commit the unlawful acts.  Response at 3-4.

## LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL

In deciding a motion for judgment of acquittal, the court must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  United States v. Stiger, 413 F.3d 1185, 1193 (10th Cir. 2005)(quoting United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000))(internal quotations omitted), cert. denied, 126 S. Ct. 775 (2005).  The court relies "on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented."  Id. at 1194 (quoting United States v. Radcliff, 331 F.3d 1153, 1157 (10th Cir. 2003))(internal quotations omitted).  The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason."  United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)(citations and

internal quotations omitted).

The court's role is to determine whether the evidence, if believed, would establish each element of the crime.  See United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004)(citations omitted).  "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt."  United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(quoting United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999))(internal quotations omitted).  The court should not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict.  See United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)(citations omitted).  The court should not uphold a conviction, however, "obtained by piling inference upon inference.  An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning."  United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(citations and internal quotations omitted).  As the United States Court of Appeals for the Tenth Circuit stated in United States v. Summers, 414 F.3d 1287 (10th Cir. 2005):

> The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one.

Id. at 1294-95 (internal quotations omitted).

## LAW REGARDING AIDING AND ABETTING

18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

To establish aiding and abetting, the United States must prove the following four elements:

> (1) that the defendant associated [himself] with a criminal venture; (2) that the defendant participated in the venture as something [he] wished to bring about; (3) that [he] sought by [his] actions to make it succeed; and, lastly, (4) that the proof establishes the commission of the offense by someone and the aiding and abetting by the defendant so charged.

United States v. Sarracino, 131 F.3d 943, 946 (10th Cir. 1997)(citations and internal quotations omitted)(alterations in original).  As the Tenth Circuit has explained, the United States "must prove more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed.  However, participation may be established by circumstantial evidence, and the evidence may be of 'relatively slight moment.'"  United States v. Verners, 53 F.3d 291, 295 (10th Cir. 1995).

## ANALYSIS

Neha moves the Court for a judgment of acquittal under rule 29, contending that the United States failed to prove beyond a reasonable doubt that he aided and abetted Counts II and III.  See Motion for Judgment of Acquittal at 2-4.  Unsurprisingly, the United States disagrees.  See Response at 3-4.  Because a reasonable jury could have found that Neha aided and abetted the perpetrators of Counts II and III, the Court will deny Neha's motion.

The Court will begin with Count III, because the events giving rise to that charge occurred earlier in the night than Count II.  Count III alleges that Neha placed, or aided and abetted in placing, an object into the victim's vagina.  See Superseding Indictment at 2.  Neha argues that the evidence at trial showed only that Neha "was merely present when these acts were occurring and, in fact, expressed displeasure to the principals by telling them to stop."  Motion for Judgment of Acquittal at 3.  Neha also contends that carrying the victim into the bedroom after others had placed objects

into her vagina might make him an accessory after the fact, but not an aider and abetter. See id. at 3-4.[2]

On the contrary, Marcus Tsethlakai testified that Daryl Dickson and Aaron Cheama took off the victim's shirt and pulled down her pants, respectively, while she was on the couch. See Transcript of Trial at 195:18-19 (taken November 30, 2005). Tsethlakai stated that Neha then "ripped" off her underwear. Id. at 195:20-23, 197:19-22. After Neha removed her underwear, he watched Cheama insert a bottle inside the victim's vagina; Neha smiled and laughed while this occurred. See id. at 197:23-198:19.

Taking this testimony in the light most favorable to the United States, a reasonable jury could have found beyond a reasonable doubt that Neha aided and abetted putting the bottle inside the victim. The jury could have determined that Neha paved the way for Cheama's battery by removing the last remaining piece of clothing hindering Cheama – the victim's underwear. The jury could also have concluded that Neha's laughing and smiling proved that he wanted Cheama to succeed in battering the victim and that he tore off the victim's underwear to help Cheama attack the victim. A reasonable jury could have interpreted Neha's behavior – ripping off the victim's underwear, stepping back from the victim, and laughing and smiling as he watched another person put a bottle inside the victim – as consistent with a person witnessing the fulfillment of a plan to invade the victim's body with which he heartily agreed and which he endeavored to carry out. The Court will therefore not disturb the jury's verdict on Count III.

---

[2] Neha maintains further that there is no evidence that he acted as a principal by inserting objects himself into her vagina. See Motion for Judgment of Acquittal at 4. At the hearing on February 17, 2006, the United States agreed that there was no evidence suggesting that Neha was a principal as to Count III, and that the only way to interpret the jury's verdict on this charge was that Neha was an aider and abettor. See Transcript of Hearing at 19:25-20:5 (taken February 17, 2006).

Count II alleges that Lamy engaged in sexual intercourse with the victim in the early morning of June 16, 2002. Neha asserts that the only evidence introduced at trial was that Lamy had sex with the victim, but that no evidence linked Neha to Lamy's conduct. See Motion for Judgment of Acquittal at 2. Again, the evidence indicates more than Neha contends. The United States introduced evidence that, after the incident with the bottle, Neha helped carry the victim into a bedroom and put her on a bed. See Transcript of Trial at 203:5-204:5. Dickson put his penis into the victim's mouth. See id. at 207:1-2. Within five minutes of placing her on the bed, Neha had sex with the victim. See id. at 207:25-208:11. Afterward, Neha zipped his pants and started laughing. See id. at 209:23-210:2. At some point during these events, Sherry Shebola came into the room. See id. at 211:9-15. Neha told Tsethlakai to take Shebola out of the room and "keep her occupied." Id. at 211:9-212:3. About five minutes later, Shebola and Tsethlakai reentered the room, and Neha, along with the other young men in the room, laughed. See id. at 214:1-215:1. At about 6 a.m., Tsethlakai went back into the room and found Lamy having sex with the victim. See id. at 215:8-217:3. Neha was somewhere outside the room at this time. See id. at 218:15-23.

Viewing the evidence in the light most favorable to the United States, the jury could have reasonably concluded that Neha chose to associate himself with a night of sexual assault, culminating in Lamy raping the victim, by helping to carry the victim to the bedroom where the assaults took place, and taking part himself in sex with the victim. The jury could have determined that Neha sought to make the attacks on the victim succeed by directing Tsethlakai to remove Shebola from the bedroom and to keep her occupied while the molestation took place. By having sex with the victim and laughing when Shebola returned to the room, the jury could have believed that Neha indicated his approval of the scheme. Because a reasonable jury, putting the evidence together, could have

found beyond a reasonable doubt that Neha aided and abetted Lamy's rape of the victim through his actions over the course of the night, the Court will leave intact the jury's verdict on Count II.

The Court's role at this stage is not to sift through the evidence and arrive at its own conclusion on guilt or innocence; instead, the Court's task is limited to deciding whether the evidence, if believed, would establish each element of the crime. See United States v. Delgado-Uribe, 363 F.3d at 1081. The Court should only overturn a jury's finding if no reasonable juror could have reached the disputed verdict. See United States v. Carter, 130 F.3d at 1439. Based on the evidence on Counts II and III, the Court cannot say that no reasonable juror could have convicted Neha on both counts. The Court will therefore deny Neha's motion.

**IT IS ORDERED** that Defendant Donovan Jones Neha's Motion for Judgment of Acquittal on Counts II and III is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
    United States Attorney for the District of
        New Mexico
Stan Whitaker
Fred C. Smith
    Assistant United States Attorneys
        for the District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles and Crow
Albuquerque, New Mexico

*Attorneys for Defendant Donovan Jones Neha*

John F. Moon Samore
Albuquerque, New Mexico

*Attorney for Defendant Dion Lamy*