# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.   No. CR 04-1677 JB

DONOVAN JONES NEHA and
DION LAMY,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Donovan Jones Neha's Motion for New Trial, filed December 8, 2005 (Doc. 272). The Court held a hearing on this motion on February 17, 2006. The primary issue is whether the Court should order a new trial in this case because FBI Agent Marcus McCaskill testified that a statement that Neha had made had been altered because of legal ruling and because Aaron Cheama testified that Neha had touched the victim's breasts in spite of the Court's ruling keeping out this evidence. Because the interest of justice does not require a new trial, the Court will deny the motion.

## PROCEDURAL BACKGROUND

On August 25, 2004, a federal grand jury returned a five-count Indictment against Neha, Dion Lamy, and Cheama. On February 25, 2005, a federal grand jury returned a seven-count Superseding Indictment against Lamy and Neha.[1] The Superseding Indictment charged Neha in Counts I-III of violating 18 U.S.C. § 2242(2)(B), Sexual Abuse, and 18 U.S.C. § 2, Aiding and Abetting. The grand jury also charged Neha in Counts IV-V of violating 18 U.S.C. § 113(a)(4), Assault by Striking,

---

[1] Cheama pled guilty to Count II of the original indictment on November 18, 2004.

Beating, or Wounding, and 18 U.S.C. § 2, Aiding and Abetting. Finally, the Superseding Indictment charged Neha in Counts VI-VII of violating 18 U.S.C. § 2244(a)(2), Abusive Sexual Contact, and 18 U.S.C. § 2, Aiding and Abetting. Only Counts I-III, however, were eventually submitted to the jury at trial. See Court's Final Jury Instructions (Given) at 18-21, filed December 1, 2005 (Doc. 263). On December 1, 2005, the jury convicted Neha on all three counts. See Verdict at 1, filed December 1, 2005 (Doc. 266).

Neha moves for a new trial pursuant to rule 33 of the Federal Rules of Criminal Procedure. Neha contends that McCaskill's statement at trial that Neha's statement had been redacted could have led the jury to infer that all statements, including Lamy's statement, had been redacted. See Motion for New Trial at 2-3. Neha also argues that Cheama's testimony that Neha had touched the victim's breasts was incurable by a limiting instruction.[2] See id. at 3. The United States responds that the Court's instruction to the jury to disregard McCaskill's statement was sufficient without further evidence that the jury had failed to follow the Court's admonition, and that Cheama's statement was minor compared to the totality of the evidence against Neha. See Response at 2-3, filed December 19, 2005 (Doc. 282).

## LAW REGARDING MOTIONS FOR A NEW TRIAL

Rule 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Motions for new trial are disfavored, however, and granted only with great caution." United States v. Mounkes, 204 F.3d 1024, 1027-28 (10th Cir. 2000)(citation omitted). In their discretion, district courts are "free to weigh the evidence

---

[2] Although Neha, in his motion, represents that Marcus Tsethlakai made this statement, the transcript reflects that Cheama accused Neha of touching the victim's breasts. See Transcript of Trial at 179:4-16 (taken November 29, 2005).

and assess witness credibility." United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999)(citation omitted).

## ANALYSIS

Neha requests a new trial because of statements that McCaskill and Cheama made at trial. Under rule 33(a), the Court may grant a new trial if the interest of justice so requires. In this case, the interest of justice does not require a new trial on either ground.

During the FBI's investigation of the victim's allegations, McCaskill obtained incriminating statements from Neha and Lamy, which the United States sought to introduce at trial. Before trial, the Court ruled that the United States could introduce these statements at trial, provided that the United States redacted the statements to remove each defendant's references to his co-defendant. See Order at 3-4, filed November 22, 2005 (Doc. 233). Excising these portions of each statement brought their introduction into compliance with Gray v. Maryland, 523 U.S. 185, 192 (1998)("Redactions that simply replace a name with an obvious blank space or a word such as 'deleted' or a symbol or other similarly obvious indications of alteration, however, leave statements that, considered as a class, so closely resemble Bruton's unredacted statements that, in our view, the law must require the same result.").

At trial, the United States attempted to introduce Neha's statement through McCaskill's testimony:

> Q.  Let me hand you what's been marked as Government's Exhibit 9B.  Can you identify that?
>
> A.  This is a typewritten version of the statement that Mr. Neha handwrote.  There are a couple of -- There were a few words that do not appear in this particular version of it because of legal things that have gone on -- in this case.

    Q.  By this Court?

    A.  Yes.

Transcript of Trial at 44:24-45:6 (taken November 29, 2005). The Defendants immediately objected to McCaskill's reference to the redactions, and the Court ruled that the United States could not introduce the statement in the wake of McCaskill's testimony. See id. at 45:7-47:6, 49:18-21. The Court told the jury to disregard McCaskill's statement. See id. at 45:8-9.

Neha asserts that McCaskill's testimony invalidated the entire trial and warrants starting over with a new trial. See Motion for New Trial at 2-3. A new trial is unnecessary, for four reasons. First, a Bruton violation occurs only when the statement of one defendant, which implicates his co-defendant, is *introduced* at trial in unredacted form or with obvious indications of alteration. See United States v. Verduzco-Martinez, 186 F.3d 1208, 1212 (10th Cir. 1999)("In Bruton v. United States, 391 U.S. 123 (1968), the Supreme Court of the United States held that the Sixth Amendment right to confront adverse witnesses is violated if the defendant's non-testifying codefendant makes an extrajudicial confession that implicates the defendant *and the Government introduces the confession into evidence at their joint trial*, even if the jury is instructed to consider the confession only against the codefendant." (emphasis added)(citation omitted)). In this case, the Court precluded the United States from introducing the statement, because McCaskill's testimony caused Neha's statement to potentially run afoul of the Sixth Amendment. See Transcript of Trial at 49:18-21. As a result, no Sixth Amendment violation occurred, because the United States did not introduce at trial an obviously redacted statement.

Second, even if the United States had introduced the statement and the statement violated the Sixth Amendment, it would have been Lamy's constitutional rights, not Neha's, that would have been

imperiled. The Supreme Court has held that "a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." Richardson v. Marsh, 481 U.S. 200, 201-02 (1987)(citation omitted). As such, Neha's statement potentially impacted only Lamy's rights, because it threatened to inculpate Lamy without Lamy being able to cross-examine Neha.

Third, Neha argues that the jury could infer, from McCaskill's testimony, that Lamy's statements had legal redactions that inculpated Neha. See Motion for New Trial at 3. Neha does not explain how the jury could make such a leap of logic. Indeed, not only did the copy of Lamy's statement admitted into evidence carefully avoid reflecting any redactions, see Order at 6-7; Government's Exhibit 7B, McCaskill's testimony negates such an inference, because he stated that "*this particular version*" of *Neha*'s statement had been altered; McCaskill specifically limited his remark to the particular statement that the United States was attempting to introduce at that very moment. See Transcript of Trial at 44:24-45:6. From this comment, it is highly unlikely that anyone could infer that all or any other statements introduced at the trial had been altered.

Finally, the weight of the evidence against Neha outbalances, by a wide margin, whatever minimal prejudice Neha may have suffered. The testimony of Tsethlakai, Cheama, and the victim, among others, sufficiently established Neha's guilt without need of Neha's or Lamy's statement. To overturn the convictions and order a new trial, because of an isolated comment concerning a piece of evidence that the United States never introduced, would not be in the interest of justice in light of the amount of evidence produced at trial.

The second ground that Neha puts forth is that Cheama's statement that Neha had touched the

victim's breasts contravened the Court's ruling that such evidence could not be admitted. See Motion for New Trial at 3.[3]  At trial, the testimony came about in the following manner while the United States questioned Cheama:

> Q. Okay.  What happened?
>
> A. Started -- Started playing with her breasts.
>
> Q. Who did?
>
> A. Marcus.
>
> Q. Okay.  Tell us how that happened.
>
> A. She was laying there, and pulled up the shirt and started rubbing on them.
>
> Q. Who did?
>
> A. Marcus.
>
> Q. And was anybody else?
>
> A. Yes.
>
> Q. Who?
>
> A. Donovan.

Transcript of Trial at 179:4-16 (taken November 29, 2005).  Neha's counsel objected, and the Court told the jury: "Ladies and gentlemen, there was an answer and question just a moment ago that related to Mr. Neha.  You will disregard the question and the answer and not take that into consideration in any way."  Id. at 180:1-181:16.

Neha argues that no instruction can cure the impact of this statement on the jury, but does not

---

[3] The Court had previously dismissed the Counts of the Superseding Indictment that charged Neha with this conduct.  See Order at 1-9, filed December 2, 2005 (Doc. 267)(memorializing ruling from trial).

explain why this case is so unusual that it warrants disregarding the Tenth Circuit's presumption that juries follow district courts' instructions. See United States v. Cherry, 433 F.3d 698, 702 (10th Cir. 2005)("This instruction appropriately constrained the jury's consideration of the evidence and we presume jurors will remain true to their oath and conscientiously follow the trial court's instructions." (internal quotations and citation omitted)), cert. denied, 126 S. Ct. 1930 (2006).  The Court believes that whatever impact this statement may have had is, at most, minimal.  Cheama's statement is the only time to which Neha can point – and of which the Court is aware – that this information came out at trial.  The reference was so fleeting that it took Neha's counsel several seconds to realize that it had happened; even then, Neha's counsel and the Court were unsure, until they checked the transcript, that it had even taken place.  See id. at 180:5-8 ("MR. BOWLES: I'm sorry.  I think the witness -- maybe I misheard him, but he blurted out some D name, and I just want to make sure it wasn't Donovan.  THE COURT:  I didn't hear it.").  Further, the Court told the jury to disregard the answer on that point.  See id. at 181:13-16.

     Neha relies on Davidson v. Smith, 9 F.3d 4 (2d Cir. 1993), for the proposition that, when a party elicits testimony that a court has precluded under rule 403, a curative instruction is not sufficient.  Davidson v. Smith, however, did not establish the kind of per se rule that Neha suggests: "There can be no litmus test for determining when the eliciting of prejudicial testimony, in violation of a court order, warrants a new trial." 9 F.3d at 8.  Furthermore, the testimony at issue in that case concerned the plaintiff's residence in a mental institution for the insane, which was more powerful in the context of that case, where the plaintiff's history of mental illness had not been previously raised, than the statement in this case that Neha had touched the victim's breasts, see Davidson v. Smith, 9 F.3d at 6; after all, there was a good deal of other evidence in this case that Neha had

touched the victim's body in more abusive and shocking ways than touching her breasts. Finally, there is no evidence in this case, as there was in Davidson v. Smith, that the prosecutor had deliberately elicited the testimony. See id. at 6-8.

**IT IS ORDERED** that the Motion for New Trial is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney for the District of
    New Mexico
Stan Whitaker
Fred C. Smith
  Assistant United States Attorneys
    for the District of New Mexico
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles and Crow
Albuquerque, New Mexico

     *Attorneys for Defendant Donovan Jones Neha*

John F. Moon Samore
Albuquerque, New Mexico

     *Attorney for Defendant Dion Lamy*