# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                          No. CR 04-1677 JB

DONOVAN JONES NEHA and
DION LAMY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Mr. Lamy's Motion for Directed Verdict of Acquittal and Supporting Memorandum of Law, filed December 9, 2005 (Doc. 275). The Court held a hearing on this motion on April 11, 2006. The primary issues are: (i) whether the United States introduced sufficient evidence for a reasonable jury to conclude that Defendant Dion Lamy aided and abetted Defendant Donovan Jones Neha's rape of the victim, placed an object in the victim's vagina, and raped the victim the following morning; (ii) whether the United States introduced sufficient evidence for a reasonable jury to conclude that the crimes occurred in Indian Country; (iii) whether the Court should reconsider its ruling allowing res gestae evidence to be introduced at trial; (iv) whether Agent Marcus McCaskill's statement on the stand that Neha's statement to the FBI had been altered because of legal rulings warrants throwing out Lamy's conviction; (v) whether the FBI agents' failure to Mirandize Lamy during their second interview warrants throwing out Lamy's conviction; and (vi) whether Lamy filed this motion in a timely manner. Because a reasonable jury could conclude that the United States, with the record at the trial, has proved each of these allegations beyond a reasonable doubt, the Court will deny the motion.

**PROCEDURAL BACKGROUND**

On August 25, 2004, a federal grand jury returned a five-count Indictment against Neha, Lamy, and Aaron Cheama. On February 25, 2005, a federal grand jury returned a seven-count Superseding Indictment against Lamy and Neha.[1] The Superseding Indictment charged Lamy in Counts I-III of violating 18 U.S.C. § 2242(2)(B), Sexual Abuse, and 18 U.S.C. § 2, Aiding and Abetting. The grand jury also charged Lamy in Counts IV-V of violating 18 U.S.C. § 113(a)(4), Assault by Striking, Beating, or Wounding, and 18 U.S.C. § 2, Aiding and Abetting. Finally, the Superseding Indictment charged Lamy in Counts VI-VII of violating 18 U.S.C. § 2244(a)(2), Abusive Sexual Contact, and 18 U.S.C. § 2, Aiding and Abetting. Only Counts I-III, however, were eventually submitted to the jury at trial. See Court's Final Jury Instructions (Given) at 18-21, filed December 1, 2005 (Doc. 263). On December 1, 2005, the jury convicted Lamy on all three counts. See Verdict at 1, filed December 1, 2005 (Doc. 266).

Lamy moves for a judgment of acquittal on all counts, because the United States did not introduce sufficient evidence for a reasonable jury to convict Lamy beyond a reasonable doubt. See Motion for Acquittal at 2-6. Lamy also contends that the United States did not prove the jurisdictional requirement that the crime occurred in Indian Country. See id. Lamy requests that the Court reconsider its ruling allowing in res gestae evidence. See id. Lamy argues that McCaskill's testimony that evidence had been altered because of legal rulings was materially prejudicial to his defense. See id. The United States disputes each of these points. See generally Response, filed March 19, 2005 (Doc. 284).

---

[1] Cheama pled guilty to Count II of the original indictment on November 18, 2004.

**LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL**

In deciding a motion for judgment of acquittal, the court must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Stiger, 413 F.3d 1185, 1193 (10th Cir. 2005)(quoting United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000))(internal quotations omitted), cert. denied, 126 S. Ct. 775 (2005). The court relies "on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented." Id. at 1194 (quoting United States v. Radcliff, 331 F.3d 1153, 1157 (10th Cir. 2003))(internal quotations omitted). The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997)(citations and internal quotations omitted).

The court's role is to determine whether the evidence, if believed, would establish each element of the crime. See United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004)(citations omitted). "[T]he evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(quoting United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999))(internal quotations omitted). The court should not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict. See United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)(citations omitted). The court should not uphold a conviction, however, "obtained by piling inference upon inference. An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning." United States v.

Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(citations and internal quotations omitted). As the United States Court of Appeals for the Tenth Circuit stated in United States v. Summers, 414 F.3d 1287 (10th Cir. 2005):

> The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion. In other words, the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one.

Id. at 1294-95 (internal quotations omitted).

## LAW REGARDING AIDING AND ABETTING

18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." To establish aiding and abetting, the United States must prove the following four elements:

> (1) that the defendant associated [himself] with a criminal venture; (2) that the defendant participated in the venture as something [he] wished to bring about; (3) that [he] sought by [his] actions to make it succeed; and, lastly, (4) that the proof establishes the commission of the offense by someone and the aiding and abetting by the defendant so charged.

United States v. Sarracino, 131 F.3d 943, 946 (10th Cir. 1997)(citations and internal quotations omitted)(alterations in original). As the Tenth Circuit has explained, the United States "must prove more than mere presence at the scene of the crime even if coupled with knowledge that the crime is being committed. However, participation may be established by circumstantial evidence, and the evidence may be of 'relatively slight moment.'" United States v. Verners, 53 F.3d 291, 295 (10th Cir. 1995).

## ANALYSIS

Lamy makes several challenges to the sufficiency of the evidence behind the jury's conviction, and attacks several of the Court's rulings before and during trial. None of these grounds merits a judgment of acquittal. The Court will deny Lamy's motion.

### I.      **LAMY'S MOTION WAS TIMELY FILED.**

The United States contends Lamy did not file his motion within seven days after his conviction, as rule 29(c)(1) of the Federal Rules of Criminal Procedure requires. Rule 45(a) defines what constitutes a "day" under rule 29; it excludes "the day of the act, event, or default that begins the period" and "intermediate Saturdays, Sundays, and legal holidays when the period is less than 11 days," which applies because the period involved in this motion is seven days. Lamy was convicted on December 1, 2005, which is excluded under the rule because it was the day that began the period. December 3-4 and 10-11, 2005, are excluded, because those fell on Saturday and Sunday. The seventh day therefore fell on December 12, 2005. Because Lamy filed his motion on December 9, 2005, his motion was timely.

### II.     **THE UNITED STATES INTRODUCED SUFFICIENT EVIDENCE FOR A REASONABLE JURY TO CONCLUDE THAT LAMY WAS GUILTY OF EACH COUNT.**

The United States introduced sufficient evidence for a reasonable jury to conclude that Lamy aided and abetted Neha's rape of the victim, placed an object in the victim's vagina, and raped the victim the following morning. Regarding Count I, wherein the United States accuses Lamy of aiding and abetting Neha's rape of the victim, Cheama testified that Lamy helped carry the victim into the bedroom, where Neha raped her. See Transcript of Trial at 188:2-17, 193:6-11 (taken November 29, 2005). Marcus Tsethlakai testified that Lamy groped the victim while Neha had sex with her.

See Transcript of Trial at 210:15-24 (taken November 30, 2005). Lamy's actions in taking the victim upstairs and taking part in touching her body show that he intended to associate himself with Neha's crime and to help make it succeed.

Count II charges Lamy with raping the victim. Tsethlakai testified that he saw Lamy having sex with the victim the next morning. See id. at 216:13-18. Also, Lamy made a statement to the FBI in which he represented that he had sex with her. See Dion Lamy Statement B. Taking this evidence in the light most favorable to the United States, this evidence supports a conviction on this Count beyond a reasonable doubt.

Count III alleges that Lamy inserted an object into the victim's vagina. Cheama testified that Lamy got a carrot from the refrigerator, placed it into the victim's vagina, and laughed. See Transcript of Trial at 186:6-187:1 (taken November 29, 2005). This eyewitness testimony, taken in the light most favorable to the United States, supports a conviction on this Count beyond a reasonable doubt.

Lamy challenges Cheama's testimony, contending that he "crumbled under cross-examination" and that his testimony "had no credibility worth considering [by] this Court or a jury." Motion for Acquittal at 2. Lamy is certainly entitled to his opinion of Cheama's value as a witness, but ultimately it is within the jury's province alone to weigh credibility and decide who gave trustworthy testimony at trial. See United States v. Stiger, 413 F.3d at 1194. If the jury found that Cheama was credible, then it is not the Court's place to question its determination. With Cheama's testimony, Lamy is incorrect in arguing that there was "zero evidence" that Lamy inserted an object into the victim's vagina. Motion for Acquittal at 2. Because there is sufficient evidence to support each conviction beyond a reasonable doubt, the Court will not disturb Lamy's convictions.

### III. THE UNITED STATES INTRODUCED SUFFICIENT EVIDENCE FOR A REASONABLE JURY TO CONCLUDE THAT THE CRIMES OCCURRED IN INDIAN COUNTRY.

For the reasons stated in the Court's Memorandum Opinion and Order, filed April 19, 2006 (Doc. 314), the Court concludes that the evidence that the United States introduced at trial established that Lamy committed the crime within Indian Country. See id. at 7-16. The jury could make a reasonable inference, from the testimony of Dancy Simplicio, Laisha Peyketewa, the victim, and Cheama, and from exhibits introduced by the United States, that the scene of the alleged crime was located within the exterior boundaries of the Zuni Reservation at the time of the crime. See id.

### IV. THE COURT WILL NOT RECONSIDER ITS RES GESTAE RULING.

Before trial, the Court ruled that the United States could introduce evidence at trial that Lamy attempted to burn the victim's pubic hair and struck her with a belt for the non-propensity purpose of capacity and lack of consent. See Order at 6, filed November 27, 2005 (Doc. 238). The Court determined that, under rule 403 of the Federal Rules of Evidence, the evidence's probative value was not substantially outweighed by the danger of unfair prejudice. See id. at 5-6. Lamy asks the Court to revisit that ruling in light of the effect of the evidence at trial. See Motion for Acquittal at 4. The Court sees nothing in the record that changes the rule 403 calculus and warrants reconsideration of that ruling.

Lamy also appears to challenge whether the United States met its burden of presenting evidence sufficient to support a finding that the res gestae acts occurred. See id. If Lamy intends to make such an argument, the United States introduced sufficient evidence to show the acts occurred through Tsethlakai and Cheama's testimony. See Transcript of Trial at 210:18-24 (taken November 30, 2005); Transcript of Trial at 197:1-25 (taken November 29, 2005).

## V.	MCCASKILL'S TESTIMONY AT TRIAL DID NOT MATERIALLY PREJUDICE LAMY.

Before trial, the Court ruled that the United States could introduce, at trial, statements made separately by Lamy and Neha that inculpated both defendants, provided that the United States redacted the statements to remove references in each defendant's statement to his co-defendant. See Order at 1-5, filed November 22, 2005 (Doc. 233). During the trial and before the evidence was admitted, McCaskill identified the typewritten version of Neha's statement, but disclosed to the jury that it had been altered because of legal issues that the statement presented:

> A.  This is a typewritten version of the statement that Mr. Neha handwrote. There are a couple of -- There were a few words that do not appear in this particular version of it because of legal things that have gone on -- in this case.
>
> Q.  By this Court?
>
> A.  Yes.

Transcript of Trial at 45:1-6 (taken November 29, 2005). By letting the jury know that the statement had been altered, introduction of Neha's statement would have thereafter violated the injunction of Gray v. Maryland, 523 U.S. 185 (1998), that the statement contain no obvious indications of alteration. To cure the violation, the Court refused to allow the United States to introduce the statement into evidence. See Transcript of Trial at 49:18-21 (taken November 29, 2005).

Lamy argues that the statement was "stunning" and incurably prejudicial to his client's rights under the Confrontation Clause. Motion for Acquittal at 5. The Court does not agree, because any prejudice that Lamy might have suffered from the disclosure to the jury that Neha's statement had been altered was cured by the fact that the statement was not admitted into evidence. Lamy's right to confront the witnesses against him, including a non-testifying co-defendant, was not violated,

because Lamy's co-defendant never testified against him in the form of Neha's statement to the FBI.

## VI.    THE FBI AGENTS' FAILURE TO MIRANDIZE LAMY DURING THEIR SECOND INTERVIEW DOES NOT WARRANT THROWING OUT LAMY'S CONVICTION.

For the first time, Lamy argues that the FBI agents who interviewed him did not Mirandize him during the second interview and that this omission requires undoing Lamy's convictions. See Motion for Acquittal at 3. Lamy's argument fails to carry the day for three reasons. First, the Court has already determined that Lamy was not in custody during either interview; Miranda warnings were not required before either interview. See Order at 8-10, filed December 9, 2005 (Doc. 273).

Second, even if Lamy was in a custodial interrogation, the Tenth Circuit has held that "[t]he mere passage of time . . . does not compromise a Miranda warning. Courts have consistently upheld the integrity of Miranda warnings even in cases where several hours have elapsed between the reading of the warning and the interrogation." Mitchell v. Gibson, 262 F.3d 1036, 1057-58 (10th Cir. 2001)(internal quotations omitted)(citing cases from the United States Courts of Appeals for the Fourth, Sixth, and Ninth Circuits). In United States v. Andaverde, 64 F.3d 1305 (9th Cir. 1995), the Ninth Circuit upheld a statement that police obtained the day after Miranda warnings had been given, even though the defendant had been in custody during the entire day. Id. at 1310-13.

Looking at the totality of the circumstances in this case, the facts do not indicate that Lamy would have forgotten the Miranda warnings given before the first interview. The second interview occurred on the same day that he received the Miranda warnings. See Memorandum Opinion and Order at 2-4, filed November 17, 2005 (Doc. 224). McCaskill had carefully explained Lamy's rights to him and allowed Lamy to read the advice of rights form. See id. at 2-3. During both interviews, Lamy was in familiar surroundings: inside his home during the first interview, and in a parked car

just outside his home during the second interview.  See id.  McCaskill had interviewed Lamy twice before; on one of those occasions, Lamy had signed an advice of rights form.  See id. at 4-5.

Finally, even if Lamy is correct that the failure to administer the Miranda warnings precludes the use of the statement as evidence against him, the Court concludes that Lamy suffered no prejudice, because the rest of the evidence in this case, as outlined above, is sufficient to support a conviction beyond a reasonable doubt.  Lamy's counsel himself suggested that looking at the sufficiency of the evidence without the statement would be the proper recourse in such a situation.  See Transcript of Hearing at 31:7-32:10 (taken April 11, 2006).[2]  The Court has done so, and finds it is sufficient to support the conviction beyond a reasonable doubt.  The testimony of Tsethlakai, Cheama, and the victim, among others, sufficiently established Lamy's guilt without need of Lamy's statement.

**IT IS ORDERED** that Mr. Lamy's Motion for Directed Verdict of Acquittal and Supporting Memorandum of Law is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

-10-

*Counsel:*

David C. Iglesias
  United States Attorney for the District of
    New Mexico
Stan Whitaker
Fred C. Smith
  Assistant United States Attorneys
United States District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Jason Bowles
B.J. Crow
Bowles and Crow
Albuquerque, New Mexico

    *Attorneys for Defendant Donovan Jones Neha*

John F. Moon Samore
Albuquerque, New Mexico

    *Attorney for Defendant Dion Lamy*